**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

------------------------------------------------------------- X

MATTHEW PIMM, MARIA WYNN, RAMON
REILOVA, APRIL GLANDT, and CAROLYN
FAITH, Individually and as Representatives of a
Class of Participants and Beneficiaries on Behalf
of the UNITED AIRLINES CONSOLIDATED
WELFARE BENEFIT PLAN,

              Plaintiffs,

              v.

UNITED AIRLINES, INC., MERCER HEALTH
& BENEFITS ADMINISTRATION, LLC, and
JOHN DOES 1–20,

              Defendants.

------------------------------------------------------------- X

: Case No.
: 1:25-cv-15581
:
: **ORAL ARGUMENT REQUESTED**

**MERCER HEALTH & BENEFITS ADMINISTRATION, LLC'S**
**MEMORANDUM IN SUPPORT OF ITS OPPOSED MOTION TO**
<u>**DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**</u>

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................................... 1

LEGAL STANDARD ................................................................................................................. 3

ARGUMENT ............................................................................................................................... 4

I.  Plaintiffs Fail to Meet Their Burden to Establish Article III Standing.................................. 4

II.  Plaintiffs' Fiduciary-Breach Claims as to Mercer Fail as a Matter of Law. ........................... 5

    A.  Count I Fails to State That Mercer is a Functional Fiduciary of the Plan. ...................... 5

        1.  Plaintiffs Fail to Plausibly Allege that Mercer Had Any Discretionary Fiduciary Authority Over United's Selection of the Plan's Insurer and the Associated Premiums. ...................................................................................................... 6

        2.  Plaintiffs Fail to Plausibly Allege that Mercer Had Any Discretionary Fiduciary Authority with Respect to Insurer-Paid Commissions. ............................................ 9

    B.  Plaintiffs Fail to Plead that Mercer Breached any Fiduciary Duty. ............................. 12

        1.  Plaintiffs Fail to Allege Excessive Premiums. ....................................................... 13

        2.  Plaintiffs Fail to Allege Excessive Commissions. .................................................. 14

    C.  Count V Fails to State a Claim Against Mercer Based on Any Purported Fiduciary Breaches by United. ..................................................................................................... 17

III.  Plaintiffs' Prohibited-Transaction Claims as to Mercer Fail as a Matter of Law. ................. 19

    A.  Count IV Fails to State a Prohibited-Transaction Claim Against Mercer. ................... 19

    B.  Count VI Fails to Allege that Mercer Is Liable as a Knowing Participant in Any Prohibited Transactions. .............................................................................................. 19

        1.  Count VI is Too Conclusory to Survive a Motion to Dismiss................................. 19

        2.  Plaintiffs Fail to Plead a Transaction Involving Plan Assets................................... 20

        3.  Plaintiffs Fail to Plausibly Plead that Mercer was a Party-in-Interest.................... 21

IV.  Plaintiffs Fail to Show Entitlement to Equitable Relief Against Mercer............................... 22

CONCLUSION.............................................................................................................................. 22

## TABLE OF AUTHORITIES

**Cases**                                                         **Page(s)**

*Access Servs. of N. Ill. v. Capitol Adm'rs, Inc.*,
2021 WL 780483 (N.D. Ill. Mar. 1, 2021)................................................................8

*Acosta v. Bd. of Trs. of Unite Here Health*,
2024 WL 3888862 (N.D. Ill. Aug. 21, 2024) .........................................................13

*Albert v. Oshkosh Corp.*,
47 F.4th 570 (7th Cir. 2022) ............................................................................13, 16

*Am. Fed'n of Unions Loc. 102 Health & Welfare Fund v. Equitable Life*
*Assurance Soc'y of the U.S.*,
841 F.2d 658 (5th Cir. 1988) ..................................................................................8

*Appvion, Inc. Ret. Savings & Emp. Stock Ownership Plan by and through Lyon v. Buth*,
99 F.4th 928 (7th Cir. 2024) ............................................................................17, 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................3, 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................3, 7

*Burke v. Boeing Co.*,
42 F.4th 716 (7th Cir. 2022) ................................................................................5, 6

*Cent. States, Se. & Sw. Areas Health & Welfare Fund by Bunte v. Am. Int'l Grp., Inc.*,
840 F.3d 448 (7th Cir. 2016) .................................................................................22

*Chao v. Day*,
436 F.3d 234 (D.C. Cir. 2006)................................................................................9

*Chauvet v. Local 1199, Drug, Hosp. & Health Care Emps. Union*,
1996 WL 665610 (S.D.N.Y. Nov. 18, 1996)........................................................18

*Clinton v. Baxter Int'l Inc.*,
2025 WL 3470685 (N.D. Ill. Dec. 3, 2025)..........................................................13

*Comerica Bank for DALRC Retiree Benefit Tr. v. Voluntary Emp. Benefits Assocs., Inc.*,
2012 WL 12948705 (N.D. Ga. Jan. 11, 2012).......................................................10

*Consol. Beef Indus. v. N.Y. Life Ins. Co.*,
949 F.2d 960 (8th Cir. 1991) ..................................................................................8

*D.L. Markham DDS, MSD, Inc. 401(k) Plan v. Variable Annuity Life Ins. Co.*,
88 F.4th 602 (5th Cir. 2023) .................................................................................21

*Daly v. W. Monroe Partners, Inc.*,
2023 WL 2525362 (N.D. Ill. Mar. 15, 2023)..................................................................6

*Dempsey v. Verizon Commc'ns, Inc.*,
2026 WL 72197 (S.D.N.Y. Jan. 8, 2026) ....................................................................21

*Depot, Inc. v. Caring for Montanans, Inc.*,
915 F.3d 643 (9th Cir. 2019) ....................................................................................10

*Dinerstein v. Google, LLC*,
73 F.4th 502 (7th Cir. 2023) ......................................................................................3

*Eversole v. Metro. Life Ins. Co.*,
500 F. Supp. 1162 (C.D. Cal. 1980) ............................................................................9

*Farm King Supply, Inc. Integrated Profit Sharing Plan & Tr. v. Edward D. Jones & Co.*,
884 F.2d 288 (7th Cir. 1989) ......................................................................................8

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014)............................................................................................3, 17

*Fink v. Union Cent. Life Ins. Co.*,
94 F.3d 489 (8th Cir. 1996) ......................................................................................12

*Gallagher Corp. v. Mass. Mut. Life Ins. Co.*,
105 F. Supp. 2d 889 (N.D. Ill. 2000) ....................................................................8, 12

*Geinosky v. City of Chicago*,
675 F.3d 743 (7th Cir. 2012) ....................................................................................10

*Georgas v. Kreindler & Kreindler*,
41 F. Supp. 2d 470 (S.D.N.Y. 1999).............................................................................9

*Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*,
530 U.S. 238 (2000)..................................................................................................21

*Hecker v. Deere & Co.*,
556 F.3d 575 (7th Cir. 2009) ....................................................................................15

*Hughes v. Nw. Univ.*,
595 U.S. 170 (2022)..................................................................................................17

*Hughes v. Nw. Univ.*,
63 F.4th 615 (7th Cir. 2023) ....................................................................................13

*Humphries v. Mitsubishi Chem. Am., Inc.*,
2025 WL 2402281 (S.D.N.Y. Aug. 19, 2025)................................................................16

*Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*,
768 F.3d 284 (3d Cir. 2014)......................................................................................11

iii

*Johnston v. Paul Revere Life Ins. Co.*,
241 F.3d 623 (8th Cir. 2001) ..................................................................................12

*Lalonde v. Mass. Mut. Ins. Co.*,
728 F. Supp. 3d 141 (D. Mass. 2024) ......................................................................17

*Leimkuehler v. Am. United Life Ins. Co.*,
713 F.3d 905 (7th Cir. 2013) ...............................................................................7, 12

*Limestone Dev. Corp. v. Village of Lemont*,
520 F.3d 797 (7th Cir. 2008) .....................................................................................3

*Lockheed Corp. v. Spink*,
517 U.S. 882 (1996)..................................................................................................21

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....................................................................................................5

*Mahoney v. J.J. Weiser & Co.*,
564 F. Supp. 2d 248 (S.D.N.Y. 2008)..............................................................8, 9, 11

*Martin v. CareerBuilder, LLC*,
2020 WL 3578022 (N.D. Ill. July 1, 2020)..............................................................12

*Mass. Laborer's Health & Welfare Fund v. Blue Cross Blue Shield of Mass.*,
2022 WL 952247 (D. Mass. Mar. 30, 2022)............................................................10

*Matousek v. MidAmerican Energy Co.*,
51 F.4th 274 (8th Cir. 2022) ....................................................................................13

*McCaffree Fin. Corp. v. Principal Life Ins. Co.*,
811 F.3d 998 (8th Cir. 2016) ...................................................................................11

*Mertens v. Hewitt Assocs.*,
508 U.S. 248 (1993)..................................................................................................22

*Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*,
577 U.S. 136 (2016)..................................................................................................22

*Mooney v. Ill. Educ. Assoc.*,
942 F.3d 368 (7th Cir. 2019) ...................................................................................22

*Neil v. Zell*,
2010 WL 11603191 (N.D. Ill. Mar. 11, 2010).........................................................12

*Patrico v. Voya Fin., Inc.*,
2017 WL 2684065 (S.D.N.Y. June 20, 2017) ..........................................................12

*Pegram v. Herdrich*,
530 U.S. 211 (2000)....................................................................................................5

*Rao v. BP Prods. N. Am., Inc.*,
  589 F.3d 389 (7th Cir. 2009) .................................................................................6

*Renfro v. Unisys Corp.*,
  671 F.3d 314 (3d Cir. 2011)................................................................................11

*Rosen v. Prudential Ret. Ins. & Annuity Co.*,
  718 F. App'x 3 (2d Cir. 2017) ............................................................................20

*Santomenno v. Transamerica Life Ins. Co.*,
  883 F.3d 833 (9th Cir. 2018) ..............................................................................11

*Schulist v. Blue Cross of Iowa*,
  717 F.2d 1127 (7th Cir. 1983) ............................................................................11

*Scott v. Aon Hewitt Fin., Advisors, LLC*,
  2018 WL 1384300 (N.D. Ill. Mar. 19, 2018)......................................................11

*Sereboff v. Mid Atl. Med. Servs., Inc.*,
  547 U.S. 356 (2006)............................................................................................22

*Thole v. U.S. Bank N.A.*,
  590 U.S. 538 (2020).............................................................................................4

*Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*,
  843 F.3d 561 (2d Cir. 2016)...............................................................................18

*Turner v. Schneider Elec. Holdings, Inc.*,
  530 F. Supp. 3d 127 (D. Mass. 2021) .................................................................11

**Statutes**

ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B) ...............................................................21

ERISA § 3(21)(A)(i), (iii), 29 U.S.C. § 1002(21)(A)(i), (iii) .........................................5

ERISA § 404(a), 29 U.S.C. § 1104(a) ............................................................................5

ERISA § 405(a), 29 U.S.C. § 1105(a) ..........................................................................12

ERISA § 406(a), 29 U.S.C. § 1106(a) .....................................................................20, 21

ERISA § 406(b), 29 U.S.C. § 1106(b)...........................................................................19

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)..................................................................22

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1) ....................................................................3, 5

Federal Rule of Civil Procedure 12(b)(6) ....................................................................3, 5

**INTRODUCTION**

Voluntary benefits insurance offers additional protection against unexpected costs arising from accidents, critical illnesses, and hospital stays. Plaintiffs—employees of United Airlines, Inc. ("United") who elected to purchase such coverage made available by United—do not claim they were denied what they paid for or that their policies were administered improperly. Their core complaint is that they paid too much in premiums for the insurance—an assertion that they fail to back up with facts. Unable to support their excessive-premium claim, Plaintiffs turn their sights on Mercer Health & Benefits Administration, LLC ("Mercer"), who provided brokerage services to United in connection with United's selection of insurer, and allege that Mercer received excessive commissions from the insurer.

Plaintiffs attempt to impose ERISA obligations where those duties do not reside. As an insurance broker, Mercer had no fiduciary authority with respect to United's selection of an insurer, premium charges, or commission rates. That ends the case as to Mercer. Plaintiffs' claims additionally fail because they fail to plausibly allege any breaches of duties imposed by ERISA or prohibited transactions. Relying on nothing more than generalized grievances about the voluntary-benefit industry, Plaintiffs fail to allege that the insurance they elected was available on the market for *any* less than they paid, or that Mercer's commissions (paid by the insurer, not by Plaintiffs) were excessive in relation to services rendered or impacted their premiums. Having received the benefits of their policies, Plaintiffs now try to leverage ERISA to obtain an unwarranted windfall. Their conclusory and implausible ERISA claims should be dismissed with prejudice.

**FACTUAL BACKGROUND**

United employees have the option to participate in a voluntary benefits plan (the "Plan") that makes available elective coverages under accident, critical-illness, and hospital-indemnity insurance policies from ReliaStar Life Insurance Company ("ReliaStar"). Compl. ¶¶ 2, 103.

1

Plaintiffs are current and former employees who elected to participate. *Id.* ¶¶ 13–17. They allege that United sponsors the Plan as an employer, is the Plan's named fiduciary, and exercises fiduciary authority and discretion with respect to the Plan, its assets, and its administration. *Id*. ¶¶ 20–24.

Mercer is an insurance brokerage firm. *Id.* ¶ 26. Plaintiffs allege that Mercer recommended to United certain insurance companies to offer voluntary benefits policies. *Id*. ¶ 80. Plaintiffs claim that, "[a]s a matter of industry practice," brokers like Mercer are functional fiduciaries under ERISA because they exercise discretion in administering voluntary-benefit plans. *Id.* ¶ 84. They claim that "brokers such as Mercer may screen the bids" they receive from insurers and present employers with a "curated set of alternatives." *Id*. ¶ 85. Plaintiffs allege that Mercer is compensated for its role through commissions paid by the insurer out of premiums collected from Plan participants, which premiums and commissions are disclosed to United and reported on its annual Forms 5500 filed with the U.S. Department of Labor ("DOL"). *Id.* ¶¶ 79, 154.

Although the Complaint refers to industry practice and what brokers *may* do, its factual allegations about what Mercer actually *did* are scant. It conclusorily alleges that Mercer exercised authority or control over administration or management of the Plan and its assets. *Id.* ¶ 28. It also alleges that Mercer has served as the Plan's broker since 2020. *Id*. ¶ 104. Plaintiffs concede that these commissions were paid by insurers, not by the Plan, its participants, or United. *Id*. ¶ 79.

*Plaintiffs assert that Mercer acted as a fiduciary to the Plan, breached fiduciary duties, and engaged in prohibited transactions by causing participants to pay excessive premiums and by receiving excessive commissions*. Count I alleges a breach of the duty of prudence as to Mercer and United. *Id.* ¶¶ 182–196. Count IV alleges that Mercer acted as a fiduciary and, by collecting commissions, caused the Plan to engage in prohibited transactions by dealing with assets of the Plan for its own account and/or receiving consideration for its own account in connection with a

transaction involving the assets of the Plan. *Id*. ¶ 220. Counts V and VI allege that Mercer knowingly participated in United's fiduciary breaches and prohibited transactions. *Id*. ¶¶ 224, 235.

## **LEGAL STANDARD[1]**

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). To withstand a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[S]heer possibility" is not enough. *Iqbal*, 556 U.S. at 678.

The Seventh Circuit and the Supreme Court have emphasized that motions to dismiss are an "important mechanism for weeding out meritless claims" in the ERISA context. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014); *see Limestone Dev. Corp. v. Village of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008). "[C]areful, context-sensitive scrutiny of a complaint's allegations" is necessary to accomplish the "important task" of "divid[ing] the plausible sheep from the meritless goats." *Dudenhoeffer*, 573 U.S. at 425. Absent careful scrutiny at the pleading stage, "a largely groundless claim [will] simply take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value." *Limestone*, 520 F.3d at 803. Defendants should not be "forced to conduct expensive pretrial discovery in order to demonstrate the groundlessness of the plaintiff's claim," especially on "a threadbare claim." *Id.*

---

[1] Unless otherwise noted, all emphasis is added and internal quotations and citations are omitted. This section cites Rule 12(b)(6) cases applying the *Twombly* and *Iqbal* pleading standard, but that standard also applies to Rule 12(b)(1). *See Dinerstein v. Google, LLC*, 73 F.4th 502, 508 (7th Cir. 2023).

## ARGUMENT

### I.    Plaintiffs Fail to Meet Their Burden to Establish Article III Standing.[2]

Plaintiffs' claims fail at the outset for lack of Article III standing. Even if Plaintiffs had alleged a statutory violation of ERISA, their failure "to plausibly and clearly allege a concrete injury" compels dismissal. *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 544 (2020).

To begin, Plaintiffs do not allege any quality deficiencies in the benefits they purchased or received. Their sole purported harm is that they paid too much for those benefits. But they fail to support that assertion with factual allegations sufficient to survive dismissal.

Despite all of their noise about commissions that Mercer received, Plaintiffs do not allege that *they* paid those commissions. Instead, they allege that commissions are an expense of *the insurance carriers*. Compl. ¶¶ 79, 145, 153. Accordingly, while commission rates affect the insurer's bottom line, they do not directly affect Plaintiffs. As such, Plaintiffs do not have a dog in the fight about the insurer's cost of delivering and servicing its insurance product.

To satisfy standing, Plaintiffs must allege more than "excessive" commissions; they need to plausibly and clearly allege that *they* could have paid less. While Plaintiffs assert that "they overpaid for premiums," *id.* ¶ 138, they come well short of plausibly or clearly alleging such overpayments. As discussed *infra*, Part II.B.1, Plaintiffs have not alleged facts to show that lower premiums generally were available, much less for comparable benefits. Plaintiffs ground their conclusory overpayment assertions exclusively on the assumption that high commissions *must* mean high premiums, *id.* ¶¶ 83, 139–159—a theory without factual support. Plaintiffs invite the Court to make an inferential leap by crediting their conclusion that "[c]ommissions to brokers impact premiums to participants dollar-for-dollar." *Id.* ¶ 78. But this speculative theory falls well

---

[2] Mercer joins United's argument that Plaintiffs lack Article III standing.

short of satisfying Plaintiffs' burden to plead an injury that is "concrete and particularized," rather than "conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Plaintiffs also plead facts that *negate* their standing. They point to several other voluntary-benefit insurance plans that they claim had lower broker-commission rates than they compute for United's Plan. Compl. ¶¶ 154–158. As explained *infra*, Part II.B.1, those "lower commission" plans that Plaintiffs point to generally had *higher* per-participant premiums than the United Plan. This confirms Plaintiffs' lack of standing, and their claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

## II. Plaintiffs' Fiduciary-Breach Claims as to Mercer Fail as a Matter of Law.[3]

### A. Count I Fails to State That Mercer is a Functional Fiduciary of the Plan.

Even if Plaintiffs had Article III standing—which they do not—the Complaint fails to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) because it does not plausibly allege that Mercer was a fiduciary.

ERISA's fiduciary duties bind only those who qualify as "a fiduciary." 29 U.S.C. § 1104(a)(1). This makes "the threshold question" for any ERISA fiduciary-breach claim whether a "person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000); *see also Burke v. Boeing Co.*, 42 F.4th 716, 720 (7th Cir. 2022) (affirming dismissal for lack of fiduciary status). An entity is an ERISA fiduciary only "to the extent" it (a) "exercises any discretionary authority or discretionary control respecting management of [a] plan or exercises any authority or control respecting management or disposition of its assets," or (b) "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(i), (iii).

---

[3] Mercer assumes for this Motion, but does not concede, that the Plan is governed by ERISA.

Fiduciary status "is not all-or-nothing." *Burke*, 42 F.4th at 725. "A person can be a fiduciary for one purpose without becoming a fiduciary for all purposes." *Daly v. W. Monroe Partners, Inc.*, 2023 WL 2525362, at *3 (N.D. Ill. Mar. 15, 2023). Here, Plaintiffs attribute to Mercer discretionary fiduciary authority over the selection of ReliaStar as the Plan's insurer, the setting of premium rates, and Mercer's own commissions. The Complaint, however, pleads no factual predicate to support any of these inaccurate conclusions.

> **1.** **Plaintiffs Fail to Plausibly Allege that Mercer Had Any Discretionary Fiduciary Authority Over United's Selection of the Plan's Insurer and the Associated Premiums.**

Plaintiffs concede that United— not Mercer—is the "named fiduciary of the Plan." Compl. ¶ 21. Plaintiffs assert that Mercer "function[ed]" as a fiduciary by exercising discretion over the Plan. *Id.* ¶ 84. Yet most of the Complaint's allegations are not specific to Mercer at all, but rather inapplicable legal principles and conclusions or generalized industry observations.

Plaintiffs allege that Mercer is a fiduciary of the Plan by reciting the text of 29 U.S.C. § 1002(21)(A)(i) and (iii). *Id*. ¶ 28. Such "[t]hreadbare recitals" of ERISA's fiduciary definition, "supported by mere conclusory statements," are the paradigm of what *Iqbal* deems insufficient. 556 U.S. at 678. Plaintiffs further cite and quote numerous legal authorities, but they fail to link these holdings to any of Mercer's conduct. Compl. ¶¶ 124–133. Plainly missing from the Complaint is any factual development about *Mercer* and the broking services it *actually* provided to United. "[M]erely restat[ing] the elements of [a statute] in boilerplate fashion" cannot substitute for factual development. *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 399 (7th Cir. 2009).

Similarly, Plaintiffs' generalized allegations about the insurance brokerage industry provide no basis from which to infer that Mercer had discretionary authority over the selection of ReliaStar. At best, the Complaint offers generic descriptions of the "[r]ole of [b]rokers" "[a]s a matter of industry practice" that shed no light on Mercer's actual role here. *E.g.*, Compl. p. 17 &

¶¶ 72–87 (discussing unrelated broker and citing industry publications). Indeed, Plaintiffs concede that their allegations about Mercer's role are mere speculation, describing the legal duties that would attach "*if* an employer-fiduciary . . . chooses to delegate to a broker," and noting that some brokers "*may* screen" bids from insurers or limit an employer's choices "to only options where commissions are favorable to the broker." Compl. ¶¶ 73, 85–86. Pleading a mere "possibility" that Mercer performed functions that other brokers might have performed elsewhere fails to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–57.

Setting aside Plaintiffs' "labels," "conclusions," and "formulaic recitation of the elements of a cause of action," *id*. at 555, the Complaint is left with no facts from which the Court may plausibly infer that Mercer acted in a discretionary fiduciary capacity with respect to the selection of ReliaStar's voluntary benefits insurance for the Plan or the associated premiums. Rather, the Complaint supports only the opposite inference that Mercer *lacked* such authority.

According to Plaintiffs, United was the named fiduciary of the Plan, "with overall authority to control and manage the operation and administration of the Plan." Compl. ¶¶ 21, 199. Plaintiffs do not allege, nor could they, that United delegated to Mercer its authority to select an insurer. At most, the Complaint alleges that Mercer "recommend[ed] the insurance company." *Id.* ¶ 80.[4] But Mercer does not assume fiduciary status by presenting United with possible insurance-carrier options. As Plaintiffs acknowledge, "[m]erely selling insurance to a Plan, with nothing more, does not automatically create a fiduciary relationship." Compl. ¶ 125.

An entity does not become an ERISA fiduciary merely by curating a menu of options from which a plan may choose. *See Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 911–12 (7th

---

[4] To the extent that the Complaint also uses the term "selected" (at ¶ 129), that must be read in context to say (at most) that Mercer selected which *options* to present, as Plaintiffs do not plausibly allege that Mercer had the authority to make final selection decisions on behalf of the Plan.

Cir. 2013). An entity's "role in selling insurance to the plan," absent "control over which insurer and which insurance product [the plan] ultimately chose," "does not amount to an exercise of discretionary authority and therefore does not render [that entity] an ERISA fiduciary with respect to those activities." *Gallagher Corp. v. Mass. Mut. Life Ins. Co.*, 105 F. Supp. 2d 889, 894 (N.D. Ill. 2000); *see also Am. Fed'n of Unions Loc. 102 Health & Welfare Fund v. Equitable Life Assurance Soc'y of the U.S.*, 841 F.2d 658, 664 (5th Cir. 1988) (same). When a provider merely functions in the role of "a salesperson earning commissions," the provider is "not a fiduciary under ERISA." *Consol. Beef Indus. v. N.Y. Life Ins. Co.*, 949 F.2d 960, 965 (8th Cir. 1991).

This applies to brokers, too. Even where a commission-based insurance broker *also* served as a benefits plan administrator (not alleged here), the broker did not become a fiduciary simply by recommending which policies the plan should purchase. *See Mahoney v. J.J. Weiser & Co.*, 564 F. Supp. 2d 248, 256–57 (S.D.N.Y. 2008). This did not "convert [the broker] into a fiduciary" absent allegations that the broker "had the authority to force the [Plan] to accept" its recommendations. *Id.* at 256; *see also Farm King Supply, Inc. Integrated Profit Sharing Plan & Tr. v. Edward D. Jones & Co.*, 884 F.2d 288, 294–95 (7th Cir. 1989) ("Only the trustees had discretionary authority or control over the Plan's assets; all [broker] did was try to convince the trustees to exercise some discretionary authority in such a way as to benefit [broker].").

Plaintiffs' cases do not say otherwise. *Access Services of Northern Illinois v. Capitol Administrators, Inc.* (Compl. ¶ 127) merely says that a broker's exercise of "final discretion in the choice of which insurance provider and plan to choose does create a fiduciary duty under ERISA." 2021 WL 780483, at *4 (N.D. Ill. Mar. 1, 2021). But it acknowledges "that offering insurance plans for sale or recommending options does not create the type of discretion required for a party to become an ERISA fiduciary." *Id.* Plaintiffs' allegations place Mercer in the latter camp, not the

8

former.[5] And *Georgas v. Kreindler & Kreindler* (Compl. ¶ 128), dismissed allegations that a broker was a plan fiduciary. 41 F. Supp. 2d 470, 475 (S.D.N.Y. 1999).

Additionally, Plaintiffs' allegation that Mercer administered claims and controlled communications under the policies (Compl. ¶ 130) does not plead any fiduciary status relevant to Plaintiffs' premium claims. Plaintiffs offer zero factual detail about what Mercer purportedly did to administer claims or control communications under the policies. Once again, Plaintiffs' cited authority is off-point. *Eversole v. Metropolitan Life Insurance Co.* (Compl. ¶ 126) merely recognizes that an *insurer* "may . . . be a fiduciary by virtue of its management or control" of an insurance policy where it was delegated discretionary "authority to grant or deny claims." 500 F. Supp. 1162, 1165–66 (C.D. Cal. 1980). Plaintiffs make no such allegations here. Even if they had, any allegations that Mercer administered claims are detached from any alleged breach, and thus cannot supply the requisite fiduciary status for that breach. "[T]here must be some connection between the discretion exercised and the breach of duty." *Mahoney*, 564 F. Supp. 2d at 257 (allegations that broker was a fiduciary "with regard to the processing of claims" were irrelevant to whether it was a fiduciary in collecting excessive premiums and commissions).

### 2. Plaintiffs Fail to Plausibly Allege that Mercer Had Any Discretionary Fiduciary Authority with Respect to Insurer-Paid Commissions.

Plaintiffs assert that Mercer had fiduciary duties with respect to the commissions it received from ReliaStar. Compl. at p. 24. This theory fails under two different grounds of well-settled law.

First, Plaintiffs' theory that Mercer "exercised authority or control over the management or disposition of the Plan's assets" by receiving "excessive commissions from Plan assets" is falsely premised on the notion that commissions are paid "from Plan assets." Compl. ¶ 28 & p. 23.

---

[5] The Complaint's citation (at ¶ 128) to *Chao v. Day*, 436 F.3d 234 (D.C. Cir. 2006) is incongruous, as *Day* addresses a broker who "solicited, accepted, and then pilfered the plans' assets by reneging on his promise to purchase insurance for the plans' members," instead taking the money for himself, *id.* at 237–38.

Plaintiffs themselves concede that Mercer's commissions are paid "by the insurance company," not by United, the Plan, or the Plan's participants. Compl. ¶ 79.[6] Accordingly, Mercer's receipt of commissions does not constitute any exercise of control over Plan assets.

Plaintiffs' allegation that Mercer's commissions came "directly out of Plan participants' premium payments" (Compl. ¶ 139) does not salvage this theory of fiduciary authority. Even if the premiums themselves were Plan assets *before* going to insurers, they certainly were not Plan assets once in the insurers' hands. *See Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 657–59 (9th Cir. 2019) ("Premiums paid to an insurance company in return for coverage under a fully insured insurance policy are not 'plan assets.'"). Once premiums are paid to insurers, a plan no longer retains any property interest in them, and the premiums cease to be plan assets (if they ever were) moving forward. *Id.*; *see also Mass. Laborer's Health & Welfare Fund v. Blue Cross Blue Shield of Mass.*, 2022 WL 952247, at *12–13 (D. Mass. Mar. 30, 2022) (premiums paid to insurer were not plan assets), *aff'd*, 66 F.4th 307 (1st Cir. 2023). Therefore, if commissions are taken from premium payments in the hands of an insurer, those commissions are "paid from assets of the carriers," not from "plan assets." *Comerica Bank for DALRC Retiree Benefit Tr. v. Voluntary Emp. Benefits Assocs., Inc.*, 2012 WL 12948705, at *15–16 (N.D. Ga. Jan. 11, 2012).

Second, even if Mercer's commissions were paid by the Plan (which Plaintiffs concede they are not), Mercer cannot be held liable as a fiduciary for its own compensation. "[I]t is well-established that a service provider who negotiates its own compensation with a plan fiduciary at

---

[6] The Plan's Forms 5500 further confirm that the commissions are paid by the insurer, not the Plan. For example, Plaintiffs plead that Mercer received $462,756 in commissions in 2024. Compl. ¶ 154. These commissions were reported in line 3(b) of Schedule A to the Plan's 2024 Form 5500. Ex. F, 2024 Form 5500, at 5. (All "Ex. __" cites are to the exhibits attached to the accompanying Declaration of Alison V. Douglass.) The DOL's Form 5500 instructions make clear that any commissions reported in line 3(b) are "paid by an insurer," not by the Plan. Ex. N, Form 5500 Instructions, at 4. The Court may take judicial notice of the Plan's Form 5500 filings because the Complaint relies on them (at ¶ 154). *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

arm's length is not a fiduciary for that purpose." *Scott v. Aon Hewitt Fin., Advisors, LLC*, 2018 WL 1384300, at \*8 (N.D. Ill. Mar. 19, 2018). The plan sponsor "exercise[s] final authority over th[e] arrangement and [i]s free to reject it or seek better terms." *Id.* Fiduciary status arises only when a service provider exercises ability to "*unilaterally* control the compensation it would receive." *Id.*

Absent this control, providers generally do not assume fiduciary status over their own compensation. *See Schulist v. Blue Cross of Iowa*, 717 F.2d 1127, 1131–32 (7th Cir. 1983) (insurer negotiating rates). Courts around the country agree. *Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d 833, 838 (9th Cir. 2018) ("[A] service provider owes no fiduciary duty with respect to the negotiation of its fee compensation."); *McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1003 (8th Cir. 2016) (holding that where a plan sponsor "remained free" to reject a service provider's terms, the provider "could not have owed a fiduciary duty under ERISA"); *Renfro v. Unisys Corp.*, 671 F.3d 314, 324 (3d Cir. 2011) ("[Service provider] owes no fiduciary duty with respect to the negotiation of its fee compensation by [plan sponsor]."). This principle is "well-established." *Turner v. Schneider Elec. Holdings, Inc.*, 530 F. Supp. 3d 127, 139 (D. Mass. 2021); *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 293 (3d Cir. 2014) ("[W]hen a service provider and a plan trustee negotiate at arm's length over the terms of their agreement, discretionary control over plan management lies not with the service provider but with the trustee, who decides whether to agree to the service provider's terms.").

These principles apply equally to insurance brokers. Even where a broker allegedly received "excessive premiums" and "high commissions" after making insurance-policy purchase recommendations to a plan, this did not transform the brokerage firm "into an ERISA fiduciary." *Mahoney*, 564 F. Supp. 2d at 256–57. Insurance brokers "are not ERISA fiduciaries unless they transcend the normal role and exercise discretionary authority." *Johnston v. Paul Revere Life Ins.*

11

*Co.*, 241 F.3d 623, 632 (8th Cir. 2001); *see also Fink v. Union Cent. Life Ins. Co.*, 94 F.3d 489, 493 (8th Cir. 1996) (collecting commissions does not turn a broker into a "fiduciary").

Plaintiffs do not allege that Mercer exercised any discretion over commission rates paid by ReliaStar, or that United was not "free to seek a better deal with a different . . . service provider." *Leimkuehler*, 713 F.3d at 912. "The Seventh Circuit [has] held that [a service provider] did not exercise discretionary authority over the trustees even if it urged them to purchase a bad insurance product with inordinately high premiums." *Gallagher Corp.*, 105 F. Supp. 2d at 897. This freedom to choose a provider other than Mercer means that Mercer could not have been a functional fiduciary with respect to the commission rates paid by ReliaStar. Where, as here, a complaint "fails adequately to allege that . . . Defendant exercised the requisite control over its compensation," the complaint "fails to allege that . . . Defendant was an ERISA fiduciary with respect" to that compensation. *Patrico v. Voya Fin., Inc.*, 2017 WL 2684065, at *3 (S.D.N.Y. June 20, 2017).[7]

### B.      Plaintiffs Fail to Plead that Mercer Breached any Fiduciary Duty.

Even if Plaintiffs had plausibly alleged that Mercer acted in a fiduciary capacity with respect to the Plan, Count I would still fail for failure to plead a breach of that duty.

Count I alleges that Defendants breached the duty of prudence by failing to use any fiduciary process to monitor and control premiums or broker commissions and causing participants to overpay for voluntary benefits insurance. *See, e.g.*, Compl. ¶¶ 7, 191–193. Fiduciary prudence is a "processed-based, not outcome-based" standard. *Martin v. CareerBuilder, LLC*, 2020 WL 3578022, at *4 (N.D. Ill. July 1, 2020). Plaintiffs plead no facts concerning any act or process

---

[7] The same goes for Plaintiffs' "co-fiduciary" theory of liability. Compl. ¶ 196. Co-fiduciary liability under 29 U.S.C. § 1105(a) extends only to "a fiduciary with respect to a plan." Even if Plaintiffs had adequately alleged a fiduciary breach by United, Mercer was not a fiduciary, and Mercer thus could not be held liable for United's breach. *See Neil v. Zell*, 2010 WL 11603191, at *8 (N.D. Ill. Mar. 11, 2010).

undertaken by any Defendant with respect to the Plan's voluntary benefits insurance, let alone any specific allegations concerning Mercer's role in that process. *See* Compl. ¶¶ 191–193. They offer instead only conclusory, group-pleading assertions that Defendants' process was deficient.

Absent actual allegations of imprudent conduct, Plaintiffs must allege facts that support "an inference that the process must have been flawed." *See Clinton v. Baxter Int'l Inc.*, 2025 WL 3470685, at *4 n.7 (N.D. Ill. Dec. 3, 2025). For the reasons that follow, the Complaint's allegations that participants "overpaid for premiums" (*e.g.*, Compl. ¶ 138) and that brokers received "excessive commission[s]" (*e.g.*, Compl. ¶ 140) support no inference of a flawed fiduciary process.

### 1. Plaintiffs Fail to Allege Excessive Premiums.

To state an ERISA imprudence claim based on purportedly excessive fees, a plaintiff must "plead[] sufficient facts to render it plausible that [the plan] incurred *unreasonable . . .* fees." *Hughes v. Nw. Univ.*, 63 F.4th 615, 631 (7th Cir. 2023). To meet this burden, "[a] complaint cannot simply make a bare allegation that costs are too high . . . . Rather, it must provide a sound basis for comparison—a meaningful benchmark." *Albert v. Oshkosh Corp.*, 47 F.4th 570, 581 (7th Cir. 2022); *see also Acosta v. Bd. of Trs. of Unite Here Health*, 2024 WL 3888862, at *7 (N.D. Ill. Aug. 21, 2024) ("[A]n ERISA plaintiff alleging excessive costs must give enough comparative context to permit the reasonable inference that the fiduciary is spending too much for what they are getting in return."). A "meaningful benchmark" must supply a "like-for-like comparison" based on plausible allegations that "similarly sized plans spend less" than plaintiff's plan for the same thing. *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 278–79 (8th Cir. 2022) (affirming dismissal).

A complaint must allege *facts*—not conclusory statements—showing the plan could have received similar benefits for less. *See Hughes*, 63 F.4th at 631–33. An excessive-fee claim must plausibly "allege that the . . . fees were excessive relative to the services rendered." *Albert*, 47 F.4th at 580. Here, Plaintiffs fail to support their assertion that they paid "excessive and unreasonable

13

premiums." Compl. ¶ 3. The Complaint alleges ranges of annual premiums for the Plan for each category of voluntary benefit (at ¶ 109), but provides no basis of comparison, let alone a meaningful benchmark, from which the Court could conclude that premiums were excessive. Plaintiffs do not identify any insurer that offers lower premiums for comparable coverages, or any plan receiving comparable coverages for lower rates. Plaintiffs' conclusory assertion that their premiums were "excessive" is insufficient as a matter of law.

While the Court may end its inquiry there, it is notable that Plaintiffs' own allegations undercut their claim that the Plan paid excessive premiums. Plaintiffs identify three plans for which Mercer served as the broker on voluntary benefits insurance. Compl. ¶¶ 155–157. Despite Plaintiffs' claim that they "pa[id] increased and excessive premiums," *id.* ¶ 146, conspicuously absent from the Complaint are any data on premiums paid by comparator plans. Premium information is readily available from the publicly filed Forms 5500 on which the Complaint relies, however. *See id.* ¶¶ 154–158. These data show that the premiums paid by participants in Plaintiffs' purported comparator plans generally were *greater* than the premiums paid by the United Plan. *See* Exs. A–M. This analysis also undercuts Plaintiffs' theory that purportedly excessive commissions to Mercer led to higher premiums, as the Form 5500 data show that these supposedly lower-commission plans generally had higher premiums than the United Plan.

In short, the Complaint fails to plausibly allege that Plaintiffs paid *any* more than they should have for the insurance products they purchased. On that basis, the fiduciary breach claim against Mercer should be dismissed with prejudice.

### 2. Plaintiffs Fail to Allege Excessive Commissions.

Unable to allege that the Plan's premiums were excessive, Plaintiffs attempt to argue that premiums must have been excessive because broker commissions were excessive (they claim) and must have driven up premiums. Compl. ¶¶ 83, 145–146. This attempt fails for several reasons.

14

First, Plaintiffs fail to establish that Mercer's commissions caused participants to overpay for their benefits. Premiums alone—regardless of commissions—reflect the total cost of voluntary benefits insurance to participants. *See supra*, Part I. Plaintiffs invite the Court to make an inferential leap—"[c]ommissions to brokers impact premiums to participants dollar-for-dollar," Compl. ¶ 78—without any factual basis. Plaintiffs' failure to plead that total premiums were excessive (*see supra*, Part II.B.1) forecloses their fiduciary-breach claim. The Seventh Circuit has rejected fiduciary-breach claims premised on post-collection allocation of participants' fees between multiple entities, holding that "[t]he total fee, not the internal, post-collection distribution of the fee, is the critical figure for" participants. *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009).[8] What matters is whether the premiums *participants* paid were comparatively high, not whether the commissions *insurers* paid to Mercer were comparatively high.

Second, Plaintiffs fail to plausibly allege that commissions paid by ReliaStar to Mercer were excessive. Plaintiffs' excessive-commission claim is based on their comparison of the average commissions that Mercer received (Compl. ¶¶ 134–135, 158) with purportedly "typical" commission rates "in the industry" (*id.* ¶¶ 140–141) and commission rates that Plaintiffs allege Mercer received in connection with benefits offered under other, unrelated plans (*id.* ¶¶ 154–157). Plaintiffs' allegations about "typical" broker commissions fall well short of supporting a plausible inference that Mercer's commissions were excessive. The Complaint's benchmarks are internally inconsistent—alleging at ¶ 82 that voluntary-benefit-insurance commissions range from 15% to 55% on average, and at ¶¶ 140–141 that the average is 2-10%. Plaintiffs also provide no source or data to support these purported benchmarks. *Id.* ¶ 140 (no source); *id.* ¶ 141 (citing Investopedia but no data). They also plead nothing about the nature or quality of the coverages reflected in the

---

[8] This issue frequently arises in the context of revenue-sharing arrangements, where mutual funds pay a portion of the fees they collect to service providers. *E.g.*, *Hecker*, 556 F.3d at 586.

supposed benchmarks to confirm comparability to the coverages at issue here. In any event, the average commission Plaintiffs estimate for the Plan (36.4%) falls squarely in the 15-55% range that they allege to be "typical." *Id.* ¶¶ 82, 154.

Plaintiffs' comparison of Mercer's commissions from ReliaStar to its commissions from other insurers likewise fails to state a claim. The Seventh Circuit has made clear that an excessive-fee claim cannot survive without "detailed allegations providing a sound basis for comparison" to other options on the market. *Albert*, 47 F.4th at 581–82. Plaintiffs' allegations at ¶¶ 154–157 offer no facts concerning the nature and quality of the insurance or broking services for those plans compared to the Plan, and thus fail to supply sufficiently "detailed allegations providing a sound basis for comparison"—*i.e.*, a meaningful benchmark. *Id.* Courts regularly dismiss excessive-fee imprudence claims for lack of appropriate comparators. *See id.* at 579–80 (affirming dismissal on this ground); *see also Humphries v. Mitsubishi Chem. Am., Inc.*, 2025 WL 2402281, at *11–14 (S.D.N.Y. Aug. 19, 2025) (same). This Court should do the same.

Third, Plaintiffs' extensive discussion of loss ratios is a red herring and provides no support for allegations that premiums and/or commissions were too high. Compl. ¶¶ 88–99. Loss ratios speak only to how much of each dollar collected in premiums is paid out in claims—two factors over which brokers have no control—and therefore only concern the profitability of insurance policies *for insurers*, not whether premiums or broker commissions were excessive. *Id.* ¶ 88. An insurer could experience a high loss ratio (*i.e.*, low profitability) on an expensive insurance coverage if it faces an unexpected onslaught of claims, but experience a low loss ratio (*i.e.*, high profitability) on a less expensive coverage if it receives fewer claims. Loss ratios are simply irrelevant here. In any event, Plaintiffs do not plausibly plead loss ratios for the Plan (they speculate that it has an "estimated" loss ratio of "significantly less than 50%," *id.* ¶ 143, but do not ground

16

this in any relevant facts specific to the Plan), and concede that the loss ratio benchmark they plead from the Affordable Care Act does not even apply to voluntary benefits. *Id.* ¶¶ 90–92.

Finally, Plaintiffs' attempt to tease a fiduciary breach claim from the widespread practice of insurance commissions also fails. Plaintiffs' assertion that, under a commission-based system, Mercer "stood to benefit from recommending the company with the highest price, rather than the lowest price" (Compl. ¶ 80) sounds in disloyalty, not imprudence—and Plaintiffs do not assert any such claim. Even if they had, alleging a mere "potential conflict of interest" is insufficient to state a fiduciary disloyalty claim. *See Lalonde v. Mass. Mut. Ins. Co.*, 728 F. Supp. 3d 141, 155 (D. Mass. 2024). Plaintiffs' theory would create near-universal liability for commission-based insurance sales to ERISA plans. Ascribing *per se* ERISA liability for a standard insurance-industry practice violates the basic principle that fiduciary standards are necessarily "context specific." *Dudenhoeffer*, 573 U.S. at 425. Such "categorical rule[s] [are] inconsistent with the context-specific inquiry that ERISA requires." *Hughes v. Nw. Univ.*, 595 U.S. 170, 173 (2022).

**C.      Count V Fails to State a Claim Against Mercer Based on Any Purported Fiduciary Breaches by United.**

Plaintiffs also claim that Mercer is liable for fiduciary breaches purportedly committed by United, even if Mercer did not possess or breach any fiduciary duties on its own. Not so.

As an initial matter, Mercer is not a fiduciary. *See supra*, Part II.A. The Seventh Circuit has never held that private parties may sue non-fiduciaries for participating in fiduciary breaches. *See Appvion, Inc. Ret. Savings & Emp. Stock Ownership Plan by and through Lyon v. Buth*, 99 F.4th 928, 956 (7th Cir. 2024) (noting that the Seventh Circuit expressly left this question open). The Court should not do so here.

Even if the claim were cognizable, it would *at minimum* require as much as would be necessary to establish co-fiduciary liability. This requires plausible allegations that Mercer at least

17

knew of United's "breach, and that [it] either knowingly participated in or concealed that breach." *See id.* at 949. Count V fails under this standard.

First, Plaintiffs fail to plausibly allege any fiduciary breach by United. Count V assumes that United failed to monitor and control premiums or broker commissions. But Plaintiffs fail to plead an ERISA violation as to either. *See supra*, Part II.B; *see also* United's Motion to Dismiss. Absent a viable claim that any fiduciary breached a duty in the first place, any attempt to ascribe secondary liability for such a breach necessarily fails. *See Appvion*, 99 F.4th at 949.

Second, Plaintiffs fail to plead that Mercer "knowingly participated" in any alleged breach by United. *See id.* Plaintiffs do not allege that Mercer had any knowledge of, or even reason to second-guess, United's monitoring of premiums and broker commissions. Nor do they plead that Mercer—even if it knew of a fiduciary breach—"affirmatively assist[ed], help[ed] conceal, or by virtue of failing to act when required to do so enable[d] [the breach of fiduciary duty] to proceed" by participating in or concealing it. *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 571 (2d Cir. 2016) (alterations in original).

Even if allowing Mercer to collect "excessive" commissions could be a breach (*contra supra*, Part II.B.2), Mercer cannot be secondarily liable for the breach on the ground that it should have known its own commissions were "excessive." Plaintiffs do not allege that Mercer received more than the commissions it bargained for, and service providers have no duty to monitor plan fiduciaries or negotiate against themselves when negotiating compensation for their services. *See supra*, Part II.A.2; *see also Chauvet v. Local 1199, Drug, Hosp. & Health Care Emps. Union*, 1996 WL 665610, at *14 (S.D.N.Y. Nov. 18, 1996) (rejecting theory that non-fiduciaries must "oversee" fiduciaries and "ensure that fiduciaries do not breach their ERISA duties").

18

**III. Plaintiffs' Prohibited-Transaction Claims as to Mercer Fail as a Matter of Law.**

**A. Count IV Fails to State a Prohibited-Transaction Claim Against Mercer.**

Count IV alleges that Mercer engaged in prohibited transactions by "collecting excessive commissions and other payments from Plan assets" in violation of 29 U.S.C. § 1106(b)(1), (b)(3). Compl. ¶¶ 218–220. This prohibited-transaction claim fails for two independent reasons.

Section 406(b) of ERISA only applies to a "fiduciary." 29 U.S.C. § 1106(b). As explained *supra*, Part II.A, Plaintiffs fail to allege that Mercer functioned as a fiduciary in any manner, let alone in the complained-of conduct (here, collecting commissions).

Count IV fails for the additional, independent reason that it is premised on Plaintiffs' assertion that Mercer "collect[ed] excessive commissions and other payments from Plan assets" (Compl. ¶ 220). As discussed *supra*, Part II.A.2, commissions are not Plan assets.

**B. Count VI Fails to Allege that Mercer Is Liable as a Knowing Participant in Any Prohibited Transactions.**

Count VI attempts to hold Mercer liable under three provisions of ERISA § 406(a)(1), all of which prohibit transactions between a plan and a "party in interest." This claim fails too.

**1. Count VI is Too Conclusory to Survive a Motion to Dismiss.**

Plaintiffs allege that Mercer "knew that by selecting and retaining Mercer as a broker for the voluntary benefits insurance, and by causing Plan assets to be transferred to Mercer as payment for premiums and/or commissions, United caused the Plan to engage" in three types of prohibited transactions. Compl. ¶¶ 239–241. These were: (1) the "exchange . . . of . . . property between the plan and a party in interest"; (2) the "furnishing of goods, services, or facilities between the plan and a party in interest"; and (3) the "transfer to, or use by or for the benefit of a party in interest,

19

of any assets of the plan." 29 U.S.C. § 1106(a)(1)(A), (C), (D).[9]

These conclusory allegations merely recite statutory provisions; they do not identify any particular transaction, let alone one involving Plan property, or any furnishing of goods, services, or facilities to the Plan. Courts reject such "threadbare recitals" of the elements of a cause of action under analogous facts. In *Rosen v. Prudential Retirement Insurance & Annuity Co.*, the plaintiff challenged fee-sharing payments that a service provider received in connection with services to a plan, and alleged prohibited transactions relating to the receipt of such payments. 718 F. App'x 3, 4 (2d Cir. 2017). The Court affirmed the dismissal of such claims as "conclusory" where the complaint merely "rehearse[d] the statutory definitions of prohibited transactions and attache[d] them to allegations of unlawful [payments]." *Id.* at 6–7. Count VI's threadbare allegations fail for the same reason.

### 2. Plaintiffs Fail to Plead a Transaction Involving Plan Assets.

Count VI hinges on the allegation that United caused the Plan to engage in prohibited transactions with Mercer by "causing Plan assets to be transferred to Mercer as payment for premiums and/or commissions." Compl. ¶¶ 239–241. Plaintiffs fail to plausibly allege that Mercer received premiums; indeed—they plead the opposite: that premiums were paid to the insurer. *Id*. ¶ 79; Ex. F, 2024 Form 5500, at 8 (reporting premiums collected *by ReliaStar*). There is no non-conclusory allegation that Mercer itself received any premium payments—even assuming those payments were Plan assets at some point. The commissions paid to Mercer cannot form the basis for a prohibited transaction, as they did not involve plan assets.

Section 406(a)(1) of ERISA is designed to prevent "commercial bargains that present a

---

[9] Paragraph 108 also states that "[i]t is reasonable to infer that Mercer collected additional undisclosed compensation, based on Mercer's known practices and those in the industry." Compl. ¶ 108. It is unclear what this allegation refers to, what it is based on, or why such an inference is supposedly "reasonable."

special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length." *Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996). "What the 'transactions' identified in § 406(a) thus have in common is that they generally involve *uses of plan assets* that are potentially harmful to the plan." *Id*. Plaintiffs' allegations regarding Mercer's receipt of commissions from an insurer fails to plead any transaction involving "plan assets" subject to Section 406(a). The Complaint makes clear that those payments were made by insurers rather than the Plan or its participants. As such, those commissions were *not* plan assets, *see supra*, Part II.B.2, thus and cannot form the basis for a Section 406(a)(1) claim.

### 3. Plaintiffs Fail to Plausibly Plead that Mercer was a Party-in-Interest.

Count VI fails for another, independent reason: Plaintiffs fail to plausibly allege that Mercer was a "party in interest" of the Plan at the relevant time. Each of ERISA § 406(a)'s subparts describes a plan's transaction with a "party in interest," 29 U.S.C. § 1106(a), which ERISA defines to include "a person providing services to [a] plan." 29 U.S.C. § 1002(14)(B). "Congress defined 'party in interest' to encompass those entities that a fiduciary might be inclined to favor at the expense of the plan's beneficiaries." *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 242 (2000).

Courts have recognized that a service provider is not a "party in interest" of the plan at the time it negotiates its contract, even if it becomes one later. *See D.L. Markham DDS, MSD, Inc. 401(k) Plan v. Variable Annuity Life Ins. Co.*, 88 F.4th 602, 609–12 (5th Cir. 2023) ("Because [the provider] was not yet providing services to the Plan, we conclude that [the provider] was not a 'party in interest' under § 1106(a) when it entered the . . . Contract."); *Dempsey v. Verizon Commc'ns, Inc.*, 2026 WL 72197, at \*12 (S.D.N.Y. Jan. 8, 2026) ("For a party to be a party in interest some prior relationship must exist between the fiduciary and the service provider."). Plaintiffs nowhere allege that Mercer was a party in interest to the Plan *before* negotiating any

21

agreement to broker insurance coverage, and it is the payments that Mercer received pursuant to its brokerage agreement that Plaintiffs attack as prohibited transactions in Count VI.

## IV. Plaintiffs Fail to Show Entitlement to Equitable Relief Against Mercer.

The Supreme Court has held that ERISA forecloses damages remedies against non-fiduciaries, even if they participate in a fiduciary's breach. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255–60, 262 (1993). Because Mercer was not a fiduciary to the Plan, *see supra*, Part II.A, Plaintiffs cannot obtain monetary damages from it.

Although Plaintiffs claim Mercer is liable for "equitable relief" under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) (Compl. ¶ 233), Plaintiffs are actually seeking legal (monetary) relief, not equitable relief, from Mercer. Section 502(a)(3) only allows recovery from a "particular fund" in the defendant's possession, "distinct from [defendant's] general assets." *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 363–64 (2006). Here, Plaintiffs have not alleged any "particular fund" in Mercer's possession that represents its alleged ill-gotten gains. They instead seek "an order requiring [Mercer] to reimburse the Plan—in other words, [they] ask[] for money damages, the epitome of legal relief." *Cent. States, Se. & Sw. Areas Health & Welfare Fund by Bunte v. Am. Int'l Grp., Inc.*, 840 F.3d 448, 453–54 (7th Cir. 2016). This is a claim "against [Mercer's] treasury generally, not one against an identifiable fund or asset." *Mooney v. Ill. Educ. Assoc.*, 942 F.3d 368, 371 (7th Cir. 2019). As a result, "the restitution sought . . . [is] legal—not equitable—because the *specific funds* to which the [plaintiffs] claim[] an entitlement . . . [a]re not in [Mercer's] possession." *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 143 (2016). Because 29 U.S.C. § 1132(a)(3) only provides for equitable relief, and Counts V and VI seek monetary rather than equitable relief, those counts must be dismissed.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed as to Mercer with prejudice.

Dated:  March 30, 2026 Respectfully Submitted,

*/s/ Alison V. Douglass*
Alison V. Douglass, *admitted pro hac vice*
James O. Fleckner, *admitted pro hac vice*
Katherine G. McKenney, *admitted pro hac vice*
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
ADouglass@goodwinlaw.com
JFleckner@goodwinlaw.com
KMcKenney@goodwinlaw.com

*Attorneys for Defendant Mercer Health and Benefits Administration, LLC*

23